IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAWN LAWREY, mother and next friend of AUBREE LAWREY, a minor, | CASE NO. 8:11CV63 |
| Plaintiffs, | |
| v. | MEMORANDUM AND ORDER |
| KEARNEY CLINIC, P.C., and DAWN M. MURRAY, M.D., | |
| Defendants. | |

This matter is before the Court on the Defendants Kearney Clinic, P.C., and Dawn M. Murray, M.D.'s Motion to Exclude Testimony of Plaintiffs' Experts (Filing No. 56). The Motion is supported by briefs (Filing Nos. 57, 74) and indexes of evidence (Filing Nos. 58, 73), and the Plaintiffs have opposed the Motion in their brief (Filing No. 67), supported by an index of evidence (Filing No. 68). For the reasons stated below, the Motion–as it seeks to exclude certain opinions offered by the experts–will be granted.

### FACTUAL BACKGROUND

Plaintiffs Dawn Lawrey ("Dawn") and Aubree Lawrey ("Aubree"), a minor, are residents and citizens of Wisconsin. Defendant Kearney Clinic, P.C., is a Nebraska professional corporation with its principal place of business located in Kearney, Nebraska. Defendant Dawn M. Murray, M.D. ("Murray"), is a physician in Nebraska. On March 1, 2008, Dawn gave birth to Aubree in Kearney, Nebraska, at Good Samaritan Hospital. Murray, the attending physician, delivered Aubree.

Plaintiffs allege that the Defendants negligently treated and cared for Dawn during the delivery of Aubree, and that the Defendants' negligent treatment and care were the proximate cause of brachial plexus injuries suffered by Aubree, resulting in a condition

known as Erb's Palsy. Defendants contend that Aubree was delivered with minimal pushing by Dawn; there is no evidence that Murray applied any traction at all during the birth; and the Plaintiffs are attempting to prove negligence through a *res ipsa loquitur* theory of liability.

All parties acknowledge that birth-related brachial plexus injuries occur as a result of stretching or "traction" on the complex of nerves that make up the brachial plexus. All parties also acknowledge that birth-related brachial plexus injuries can occur when a delivery involves shoulder dystocia and the birth attendant applies excessive traction on the infant's head and neck. All parties also acknowledge that temporary birth-related brachial plexus injuries can occur as the result of the natural forces of labor. Defendants seek to exclude the Plaintiffs' expert witnesses, Scott Kozin, M.D., and Amos Grunebaum, M.D., from offering their opinion that *permanent* brachial plexus injuries *cannot* be caused by the natural forces of labor and therefore *must* be the result of excessive traction applied to the infant's head and neck during delivery.

**LEGAL STANDARD**

"A United States District Court sitting in diversity jurisdiction applies the substantive law of the forum state . . . ." *Fogelbach v. Wal-Mart Stores, Inc.*, 270 F.3d 696, 698 (8th Cir. 2001). A federal court sitting in diversity will also apply federal procedural law. *Great Plains Trust Co. v. Union Pacific R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). Accordingly, this Court applies the Federal Rules of Evidence and looks to cases interpreting those Rules, while recognizing that the relevance

2

of any expert's testimony may depend upon questions of substantive law of the forum state, Nebraska.

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court held that trial court judges must act as "gatekeepers" to screen proffered expert testimony to ensure that what is admitted "is not only relevant, but reliable." 509 U.S. at 589. The Supreme Court emphasized that "[t]he inquiry envisioned by Rule 702 . . . is a flexible one." *Id.* at 594. The Supreme Court suggested four factors that trial court judges may wish to consider: (1) whether a theory or technique can be and has been tested, (2) whether it has been subject to peer review or publication, (3) whether it has known or potential error rates and standards, and (4) its general acceptance in the scientific community. *Id*. at 593-94.

## DISCUSSION

Defendants object to Plaintiffs' experts offering an opinion that permanent brachial plexus injuries *cannot* be caused by natural forces of labor, and *must* be the result of excessive traction applied to the infant's head and neck by the birth attendant. Defendants contend that such a theory has not been and cannot be tested, and is not generally

3

accepted in the current medical and obstetric field. Defendants also challenge the qualifications of Dr. Kozin, an orthopedic surgeon, to testify about the etiologies of labor-and-birth-related brachial plexus injuries.

In response, Plaintiffs do not indicate that their experts will testify that permanent brachial plexus injuries cannot be caused by the natural forces of labor, or that such injuries are always the result of excessive traction applied by the birth attendant. Instead, Plaintiffs argue that "[t]he theory of physician-applied traction in the presence of shoulder dystocia as a cause of permanent brachial plexus injury has been tested, subjected to peer review and publication and is thoroughly explored and supported in the medical literature and in the relevant scientific community." Pls.' Br., Filing No. 67, at 10. Plaintiffs note that "[i]t is well established and accepted in the medical literature, that the most common cause of injuries to the brachial plexus is lateral traction." *Id*. at 11. Referring to scholarly studies, Plaintiffs note that uterine contractions "normally" do not produce forces that would stretch the brachial plexus beyond its elastic limits (*id.* at 13), and such forces are not "normally" generated in utero (*id*. at 22).

With respect to the testimony of Dr. Grunebaum, Plaintiffs note that, based on practice bulletins, American College of OB/GYN literature, and his own 30-plus years of experience as a practitioner, "every single case involving permanent Erb's Palsy and shoulder dystocia which he has studied or encountered was caused by excessive traction." *Id*. at 15. It is less clear whether Dr. Kozin intends to offer an opinion that permanent brachial plexus injury *cannot* be caused by natural maternal forces during labor and delivery, or that traction imposed by the birth attendant is the *only* cause of such injury.

4

Defendants refer the Court to the decision in *Madrigal v. Mendoza*, 639 F. Supp. 2d 1026 (D. Ariz. 2009), where summary judgment for a defendant physician was granted, in part because the plaintiff's expert was precluded from offering any opinion that an infant's allegedly permanent brachial plexus injury could not have occurred "but for improper traction." *Id.* at 1031. That court noted the evidence before it suggested that brachial plexus palsy may antedate delivery; that 34-47% of brachial plexus injuries are not associated with shoulder dystocia; and that 4% occur in connection with cesarean deliveries. *Id.* at 1030.

Plaintiffs acknowledge that the issue presented here is the same as in *Madrigal, i.e.,* whether their expert can "testify that physician-applied traction was the cause of the minor plaintiff's injuries." Pls.' Br. at 25. Plaintiffs argue that, unlike the plaintiff in *Madrigal*, they have "a plethora of well documented studies, literature and book chapters that acknowledge that excessive traction is the most common cause of permanent brachial plexus injury." *Id.* Plaintiffs suggest that the case of *Cardillo v. Aron*, No. 06-774 2010 WL 986503 (Mass. Super. Jan. 6, 2010), is instructive, because the plaintiff's expert in *Cardillo* was allowed to opine that the cause of an infant's brachial plexus injury was physician-applied traction.

In *Cardillo*, it was undisputed that the infant experienced shoulder dystocia during vaginal delivery, and that the attending physician used several maneuvers, including a "Woods maneuver" to rotate the baby's shoulders and relieve the dystocia. The trial judge noted that Massachusetts permits the *res ipsa loquitur* doctrine to be employed in medical malpractice cases and, therefore, permitted the plaintiff's expert to use a "differential

5

diagnosis," testifying that the infant exhibited no signs one would expect if her Erb's palsy was caused in utero or by the natural forces of labor, so the most likely cause of her injury was excessive traction applied by the physician to relieve the shoulder dystocia. *Id*. at *8. The opinion in *Cardillo* is replete with references to generally accepted scientific literature of the past twenty years, establishing that brachial plexus injury may occur in utero and through natural forces of labor. While it is recognized that brachial plexus injuries and Erb's palsy "can result from application of excessive force to the baby's neck in an effort to free the impacted shoulder," it is "now generally accepted that not all such injuries are the doing of the birth attendant." *Id.* at *3.

Plaintiffs also refer the Court to three unreported cases in which experts were not permitted to testify that maternal expulsive forces were the cause of permanent brachial plexus injuries. As Plaintiffs acknowledge, however, those courts simply precluded the defense experts from testifying that maternal forces of labor were *the* cause of certain brachial plexus injuries. Plaintiffs note that one such court rejected the defense expert's opinion that *all* brachial plexus injuries are caused by forces of labor and not by physician-applied traction, referring to the theory as a "scientific dispute." Pls.' Br. at 33.

Nebraska does permit the theory of *res ipsa loqitur* to be used in medical malpractice cases, under certain conditions. In *Chism v. Campbell*, 553 N.W.2d 741 (Neb. 1996), the Nebraska Supreme Court said:

> The crucial question in any res ipsa loquitur situation is whether the doctrine applies at all.
> . . .
> In order that the doctrine of res ipsa loquitur may be invoked, it must be shown that the occurrence is one which would not, in the ordinary course of things, happen in the absence of negligence; the instrumentality which

6

produces the occurrence is under the exclusive control and management of the alleged wrongdoer; and there is an absence of explanation by the alleged wrongdoer.

*Id.* at 746. The Nebraska Supreme Court then determined that because "a fixed percentage of patients" in the plaintiff's circumstance would suffer the injury in question "even in the absence of negligence," and there was "no manner in which to prevent such an occurrence, we hold that the doctrine of res ipsa loquitur is inapplicable as a matter of law." *Id.* at 747.

All credible evidence before this Court suggests that brachial plexus injuries and Erb's palsy can and do occur in a fixed percentage of births where no traction is applied by the birth attendant, and the doctrine of *res ipsa loquitur* is inapplicable in this case, as a matter of law. Any theory espoused by Plaintiffs' experts to the contrary is not based on sufficient facts or data, is not the product of reliable principles or methods, is not applicable to the facts of this case, would not help the trier of fact to understand the evidence or determine any fact at issue in this case, and would be irrelevant and unreliable.

## CONCLUSION

The Defendants' Motion to Exclude Testimony of Plaintiffs' Experts is narrow, and the Court's ruling will be narrow. Plaintiffs' experts Scott Kozin, M.D., and Amos Grunebaum, M.D., will be precluded from offering any opinion that maternal expulsive forces of labor *cannot* cause permanent brachial plexus injuries, or that birth-related brachial plexus injuries are *always* the result of traction applied to an infant's head and neck by the birth-attendant, or that the injury to Plaintiff Aubree Lawrey was caused by Defendant Dr. Murray applying excessive traction to infant Aubree's head and neck.

Defendants' objections to Dr. Kozin's testimony regarding the etiologies of brachial plexus birth injuries as they occur during labor will be denied without prejudice to reassertion at trial.

Accordingly,

IT IS ORDERED:

Defendants Kearney Clinic, P.C. and Dawn M. Murray, M.D.'s Motion to Exclude Testimony of Plaintiffs' Experts (Filing No. 56) is granted as follows:

> Plaintiffs' experts Scott Kozin, M.D., and Amos Grunebaum, M.D., will be precluded from offering any opinion that maternal expulsive forces of labor cannot cause permanent brachial plexus injuries, or that birth-related brachial plexus injuries are always the result of traction applied to an infant's head and neck by the birth-attendant, or that the injury to Plaintiff Aubree Lawrey was caused by Defendant Dr. Dawn M. Murray applying excessive traction to the infant's head and neck.

And the Motion is otherwise denied without prejudice to reassertion at the time of trial.

DATED this 20th day of August, 2012.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge